UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DEVIN M. KUGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14-3133 |
| | ) | |
| RAO, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently civilly committed at Rushville Treatment and Detention Facility, brought the present lawsuit alleging claims under 42 U.S.C. § 1983 and the Fourteenth Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, related to the forced administration of psychotropic medication. The matter comes before this Court for ruling on the Defendants' Motions for Summary Judgment. (Docs. 88, 91, 100, 102). The motions are granted.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff is civilly committed at Rushville Treatment and Detention Facility ("Rushville" or "TDF") pursuant to the Illinois Sexually Violent Persons Commitment Act, 725 Ill. Comp. Stat. §

207/1 *et seq.* Defendants were employed at the facility in the following capacities: Defendant Vallebhaneni (also known as "Dr. Rao"), Defendant Bednarz, and Defendant Tinwalla were psychiatrists; Defendant Walker was the Director of Nursing; Defendant Rhoades was a nurse; and Defendants Louck and Lodge were psychologists.

On February 12, 2014, Plaintiff was removed from his therapy group for reasons that included his use of derogatory language towards other group members and an admitted infatuation with his primary therapist. Shortly thereafter, Plaintiff was placed in a mental health observation cell after he threatened to kill staff members and attempted to leave the facility. (Doc. 102-3 at 2-14). In Plaintiff's words, "I was crying. I was screaming....I kicked on doors, made a couple of threats...threatened self-harm...." Pl.'s Dep. 99:13-15.

Defendant Bednarz prescribed Ativan, an anxiety medication, and Haldol, an antipsychotic medication, at that time. (Doc. 113-1 at 9). Plaintiff initially took the Ativan, but later refused it. (Doc. 113 at 10). On February 13, 2014, he threatened to kill another resident. (Doc. 88-6 at 13). On February 15, 2014, staff observed

Plaintiff to have scratches on his wrist, presumably from a suicide attempt. (Doc. 113 at 10).

Between mid-February and March 25, 2014, Defendant Vallabhaneni and Defendant Tinwalla met with Plaintiff separately on several occasions. Defendant Tinwalla met with Plaintiff on February 16, 2014, and they discussed Plaintiff's attempts to walk out of the facility. Plaintiff stated his recollection of the events leading to his placement on mental health status was "fuzzy." Id. at 15.

Defendant Vallabhaneni met with Plaintiff on three occasions (February 22 and 28; March 7, 2014). Each time, Defendant Vallabhaneni noted Plaintiff's refusal to take his medications. Id. at 15-17; (Doc. 113-1 at 20-21). Defendant Vallabhaneni diagnosed Plaintiff with manic bipolar disorder with psychotic breaks. (Doc. 113-1 at 20-21). He also noted Plaintiff's history of loss of self-control, self-injurious behavior, agitation, and threats towards others. Defendant Vallabhaneni concluded that Plaintiff had the potential to cause self-inflicted harm or harm to others, and he recommended enforced medication. Defendant Vallabhaneni referred Plaintiff to Defendant Tinwalla for a second opinion. After

meeting with Plaintiff on March 9, 2014, Defendant Tinwalla concluded that Plaintiff "would benefit from psychotropic medication (voluntary or enforced) at this time." Id. at 23.

On March 14, 2014, Plaintiff threatened to kill staff members and harm himself. Plaintiff had struck a window with his hand until the shatterproof glass cracked. Plaintiff also had scratched his left wrist, drawing blood in an apparent suicide attempt.

Plaintiff was notified on March 24, 2014, that a hearing before the Treatment Review Committee had been scheduled for the next day. (Doc. 91-4 at 2). The notice informed Plaintiff of the reasons for the hearing and also indicated that Defendant Rhoades, a nurse, had been appointed as Plaintiff's Staff Assistant. Plaintiff testified at his deposition that he was allowed to submit a list of witnesses to testify on his behalf.

On March 25, 2014, Plaintiff appeared before the Treatment Review Committee ("Committee"). The Committee consisted of three Rushville officials: Defendant Bednarz, Defendant Louck, and another non-defendant official. According to the documentation provided, the Committee noted Plaintiff's then-recent suicide attempt, threats against staff, and the window Plaintiff cracked in

the healthcare unit. Plaintiff also stated, according to the exhibit, that he would not take "psychiatric medications." Plaintiff's witnesses were not called to testify, but Plaintiff testified in his deposition that they would not have offered any new information. Pl.'s Dep. 45:3-13; (Doc. 113-1 at 25).

The Committee "concur[ed] with [the] Involuntary Administration of Psychotropic Medication." (Doc. 91-4 at 1). As the basis for this decision, the Committee found that Plaintiff suffered from a mental illness or mental disorder, that medication was in his best interests, and that a substantial risk that Plaintiff would harm himself or others existed because of his mental condition. Plaintiff was then placed on a forced regimen of psychotropic medication (Zyprexa) until November 2014. Plaintiff was subsequently placed on blood pressure medication to treat the side effects of the psychotropic medication. Plaintiff continued to see Defendant Vallabhaneni at regular intervals during the period of enforced medication. Pl.'s Dep. 50:10-13.

Plaintiff told the Committee on March 25, 2014, that he would not take the psychotropic medications voluntarily for religious reasons. Plaintiff practices Satanism and has done so since

approximately 2003. Plaintiff testified that, as part of his religious practice, he has followed the Ninth Enochian Key since 2011. This tenet "warns of the use of substances, devices[,] or pharmaceuticals which might lead to the delusion and subsequent enslavement of the master." (Doc. 109-1 at 3). Plaintiff interprets this tenet as prohibiting the ingestion of psychotropic drugs.

## ANALYSIS

### Fourteenth Amendment Claims

Plaintiff possesses "a significant liberty interest in avoiding the unwanted administration of [psychotropic] drugs under the Due Process Clause of the Fourteenth Amendment." Washington v. Harper, 494 U.S. 210, 221-22 (1990); Youngberg v. Romeo, 457 U.S. 307, 316 (1982). Plaintiff's liberty interest must be viewed in the context of his confinement, and a regulation or rule infringing upon it must be rationally related to legitimate state interests to be constitutionally valid. Harper, 494 U.S. at 222 (citing Turner v. Safley, 482 U.S. 78 (1987)). The Illinois Administrative Code provides:

> d) An adult resident [committed pursuant to the Illinois Sexually Violent Persons Commitment Act], or, if the resident is under guardianship, the

resident's guardian, may refuse generally accepted treatment services, except the Resident Behavior Management System.

1) Administration of Psychotropic Medication

   A) Psychotropic medication shall not be administered to any resident against his or her will or without the consent of the parent or guardian of a minor who is under the age of 18, unless:

      i) A psychiatrist, or in the absence of a psychiatrist a physician, has determined that: the resident suffers from a mental illness or mental disorder; and the medication is in the medical interest of the resident; and the resident is either gravely disabled or poses a likelihood of serious harm to self or others; and

      ii) The administration of such medication has been approved by the Treatment Review Committee after a hearing (see subsection (d)(2) of this Section). However, no such approval or hearing shall be required when the medication is administered in an emergency situation. An emergency situation exists whenever the required determinations listed in subsection (d)(1)(A)(i) of this Section have been made and a psychiatrist, or in the absence of a psychiatrist a physician, has determined that the resident poses an imminent threat of serious physical harm to self or

> others. In all emergency situations, the procedures set forth in subsection (d)(5) of this Section shall be followed.

59 Ill. Admin. Code § 299.330(d)(1)(A).

The Court must examine four factors when determining the reasonableness of a challenged rule: "(1) whether the restriction is rationally related to a legitimate and neutral government objective; (2) whether there are alternative means of exercising the right that remain open to the inmate; (3) what impact an accommodation of the asserted right will have on [staff] and other [residents]; and, (4) whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns." Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009) (citing Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004)).

Harper recognized that state officials have a compelling interest in the security and safety of the institutions they manage, and that officials are also obligated to provide residents "with medical treatment consistent not only with [the resident's] medical interests, but also within the needs of the institution." Harper, 494 U.S. at 225. Plaintiff acknowledged this duty in his deposition

testimony and admitted that TDF officials were attempting to prevent him from harming himself.  Pl.'s Dep. 111:15-24.  Plaintiff could not identify any viable non-medication approaches to address his situation, id. 121:4-16, and failing to address the situation could have dire effects on Plaintiff, staff, and residents alike.  Nothing in the record suggests that the policy was an exaggerated response.  Given that the Illinois policy in question applies only when a resident is gravely disabled or poses a threat of significant harm to himself or others, and after a trained medical professional has determined that the resident suffers from a mental condition that is treatable through medication, the Court finds that the policy is rationally related to legitimate penological interests.

Plaintiff is entitled to the minimal procedural protections under the Due Process Clause.  The Illinois policy provides for notice, the appointment of a staff assistant, the right to be present at the hearing, the ability to identify witnesses to testify on the resident's behalf, and a determination by a committee consisting of individuals not involved in a resident's treatment.  59 Ill. Admin. Code § 299.330(d)(2)(A)-(L).  Here, Defendant Vallabhaneni determined that Plaintiff suffered from a mental condition and that

the administration of psychotropic drugs to treat that condition would be beneficial. He sought a second opinion from Defendant Tinwalla who concurred in the assessment.

Plaintiff received notice of a hearing, the appointment of a staff assistant, the opportunity to identify witnesses on his behalf, and he was allowed to be present at the hearing. Though the Committee did not call Plaintiff's witnesses to testify, Plaintiff admitted that his witnesses would not have offered any testimony in addition to his own. Cf. Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003) ("[T]here is no right to call witnesses [at a disciplinary hearing] whose testimony would be irrelevant, repetitive, or unnecessary.").

Therefore, the Court finds that no reasonable juror could conclude that the Defendants violated Plaintiff's Fourteenth Amendment rights.

## Religion Claims

Plaintiff also asserts that the ingestion of psychotropic drugs, voluntary or not, violates his religious beliefs. The Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibits governmental imposition of a "substantial burden on the religious exercise" of a confined individual, even if the burden results from a

rule of general applicability, unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc–1(a).  In establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion; and, (2) that the challenged practice substantially burdens that exercise of religion. Id. § 2000cc–2(b); Holt v. Hobbs, --- U.S. ---, 135 S. Ct. 853, 862 (2015).

"Religious exercise," as defined in the statute, means "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  See 42 U.S.C. § 2000cc-5(7)(A). Requests for religious accommodation "must be sincerely based on a religious belief and not some other motivation." Holt, 135 S. Ct. at 162.  Defendants do not argue that refraining from the ingestion of psychotropic medications is not a religious exercise within the context of this case, or that Plaintiff's beliefs are not sincerely held.

RLUIPA does not define "substantial burden," but recent Supreme Court decisions frame the relevant inquiry as whether the inmate was required to "engage in conduct that seriously violates his religious beliefs." Holt, 135 S. Ct. at 862 (quoting Burwell v.

Hobby Lobby Stores, Inc., 573 U.S. ---, ---, 134 S. Ct. 2751, 2775 (2014)); see Schlemm v. Wall, 784 F.3d 362, 364 (7th Cir. 2015) (applying the Holt and Hobby Lobby standards). In so ruling, the Supreme Court "articulate[d] a standard much easier to satisfy" than the longstanding jurisprudence interpreting RLUIPA in light of First Amendment rights.[1]  Schlemm, 784 F.3d at 364.

Viewing the evidence in the light most favorable to Plaintiff, and accepting his interpretation of the Ninth Enochian Key, the Court finds that Plaintiff has made a prima facie case that the administration of psychotropic drugs places a substantial burden on his religious practices.

The burden now shifts to the Defendants to show that the forced administration of psychotropic medications was the least restrictive means in furthering a compelling government interest. This standard "requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting

---

[1] Prior to the Supreme Court's decisions in Holt and Hobby Lobby, courts interpreted "substantial burden" for RLUIPA purposes as "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise…effectively impracticable." Schlemm, 784 F.3d at 364; see also Nelson v. Miller, 570 F.3d 868, 876 (7th Cir. 2009) (RLUIPA has been "interpreted with reference to Supreme Court free exercise jurisprudence.").

part[y].'" Holt, 135 S. Ct. at 863 (quoting Hobby Lobby, 134 S. Ct. at 2780). "If a less restrictive means is available for the government to achieve its goals, the government must use it." Id. (internal quotations omitted).

As discussed in the previous section, TDF officials have a compelling interest in maintaining the safety and security of staff and residents within the facility. In this situation, Plaintiff acted in a manner that caused TDF officials to conclude that he posed a risk of substantial harm to himself and others. Plaintiff's behavior included an attempt to escape the facility, suicide attempts, threatening staff and other residents with physical harm, and striking a shatterproof window until it cracked.

The short-term solution to these exhibited behaviors, as disclosed by the record, involved placing Plaintiff in a mental health observation cell with nothing more than a suicide smock and suicide blanket. Such confinement eliminates a substantial portion of the risk of harm to others, and to a lesser extent, the risk of Plaintiff harming himself. The parties, and this Court, however, do not suggest that this type of confinement is a viable long-term solution—the negative effects of prolonged, isolated confinement

have been well-documented within this judicial circuit.  See Kervin v. Barnes, 787 F.3d 833, 837 (7th Cir. 2015) (noting that serious psychological consequences from confinement in segregation have been well documented).  Plaintiff testified further that he refused to take medication voluntarily and attempts at one-on-one counseling were ineffective.  Pl.'s Dep. 121:4-16.

In light of these events, TDF officials were out of options.  More conservative treatment options compatible with Plaintiff's religious practices had failed to eliminate the substantial threat Plaintiff posed to himself and others at the TDF.  Within the context of institutional security, a solution short of long-term confinement in a mental health observation cell was not available.  Therefore, the Court finds that Defendants have shown that the enforced administration of psychotropic medications was the least restrictive means of furthering a compelling government interest and that no reasonable juror could conclude that Defendants violated Plaintiff's rights under RLUIPA.

### Medical Claims

In its Merit Review Opinion, the Court found that Plaintiff stated a plausible claim for deliberate indifference to a serious

medical need. (Doc. 6). Plaintiff testified at his deposition that he did not intend to pursue a deliberate indifference to a serious medical need claim and that he desired to withdraw this claim against the Defendants. Pl.'s Dep. 128:7-13. Plaintiff has not filed any motion to that effect.

Insofar as Plaintiff still seeks to pursue these claims, he maintains a right under the Fourteenth Amendment to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Burton v. Downey, 805 F.3d 776, 784 (7th Cir. 2015). Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. McDonald v. Hardy, 821 F.3d 882, 888 (7th Cir. 2016) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014), and Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008)). Rather, liability attaches when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Medical professionals are deliberately indifferent only if "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2008). Nonmedical officials may be held liable for intentionally denying or delaying access to medical care or interfering with treatment once prescribed. Estelle, 429 U.S. at 104.

Nothing in the record suggests that the medical professionals treating Plaintiff substantially deviated from accepted professional judgment. In addition, the record does not support a finding that Plaintiff's access to medical treatment was obstructed in any way. Therefore, the Court finds that no reasonable juror could conclude that Defendants were deliberately indifferent to Plaintiff's serious medical need.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motions for Summary Judgment [88][91[100][102] are GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions are denied as moot,**

and this case is terminated, with the parties to bear their own costs.

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c); see also Celske v Edwards, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose...has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED:     March 24, 2017.

FOR THE COURT:

*s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
